## THE WATER LOT COMPANY *vs.* JONES.

1. A verdict will not be set aside as being against the evidence, when the evidence is decidedly conflicting.
2. A hypothetical charge, which has an injurious tendency, is error.

Case, in Muscogee Superior Court. Tried before Judge WORRILL, at November Term, 1858.

Seaborn Jones sued the Water Lot Company for damages, alleging, that defendant had built a dam on the Chattahoochee river, which backed the water upon plaintiff's mill and lands situated higher up said river, by reason whereof, the mill of plaintiff was obstructed and his land injured.

On the trial of the case, the Court charged the jury: "That a permission from the plaintiff to the defendant to erect the dam complained of need not be established by direct proof, but if the jury should believe, from all the facts in evidence, that the plaintiff assented, acquiesced in, or permitted the same to be erected, then the plaintiff cannot recover."

The verdict was for the defendant, and plaintiff moved for a new trial on the grounds:

1st. That the verdict was against law and the evidence.

2d. Because the charge of the Court above stated was erroneous.

The Court granted the motion and awarded a new trial, and counsel for the Water Lot Company now assign that judgment as error, and insist that the verdict was in accordance with the evidence, and that the charge of the Court was correct in principle, and supported by the proof.

It is only necessary to give that portion of the evidence which it is claimed supports the charge of the Court, as the decision of the Supreme Court relates only to the propriety of that charge, and because the evidence is conflicting on the other material points in the case.

1st. The first piece of evidence relied on to support the charge of the Court is the following agreement:

"I do hereby agree that Dr. Ingersoll may raise his dam as high as may be necessary, provided he does not flow the water back so as to interfere with my works or the use of

them, and I do hereby renew to him the privilege heretofore given, of landing his flat and lumber on my land on the river above Columbus—this 22d February, 1839.

[Signed] "SEABORN JONES."

In connection with this agreement it appears that Ingersoll once had a dam on the river. The record does not disclose the exact place at which this dam was built, but it appears that the dam did not extend across the channel of the river, but only to the channel. The dam complained of by Jones was built, it seems, in 1845, by Jonathan Bridges for John H. Howard and Josephus Echols; and one witness says: That Ingersoll assisted in building it, and moved his mill to the west end of it. Another witness says: That Bridges once sent him to work on the dam, and instructed him to take some of the plank off the top of the dam to prevent it from backing the water upon Jones' mill, which the witness attempted to do, but Smith Jeter and Major Howard stopped him.

2d. The evidence shows that at the time Jonathan Bridges built the dam complained of, he was the lessee of Jones' mill. The record does not show for what length of time his lease to Jones' mill continued.

3d. The record shows that the suit was instituted on the 23d day of October, 1849, to recover for damage alleged to have been done during the years intervening between the years 1844 and the time when the writ was filed.

JOHNSON & SLOAN, for plaintiff in error.

SEABORN JONES, for defendant in error.

*By the Court.*—STEPHENS, J., delivering the opinion.

1. As to the point much discussed in this case, whether or not the plaintiff's land was overflowed from the dam, the evidence was too conflicting to authorise us to say that the verdict ought to have been set aside, as being against the evidence. ·

2. But we are satisfied that there was no evidence to justify the charge touching Col. Jones' permission to build the dam, and that the Judge was right in granting a new trial

on that ground.   The permission to Dr. Ingersoll was not a permission to anybody else, and the permission to him was only to raise a dam which already existed on the 22d February, 1839, while this dam was *built* six years afterwards. Besides, his dam was a small affair, compared with this one, his reaching only to the channel and this across it.   How a permission to one man to *raise* an existing little side dam can be construed into a permission to somebody else to *build* a dam across the stream six years afterwards, I cannot perceive.   Nor can Col. Jones' *acquiescence* in the building of the dam be inferred from the fact, that it was built by the lessee of his mill.   There are some cases where a lessor may be presumed to acquiesce in what is done by the lessee on the premises leased, but surely the relation of lessee and lessor cannot raise a presumption in any case, that either party acquiescesce in acts done by the other off the premises. Nor can any acquiescence be inferred from the delay in bringing the suit.   To say that delay in redressing an injury imports a consent to it, is to make the injury itself a justification of all its subsequent repetitions.

Judgment affirmed.